LOVELLS
Attorneys for the Petitioner
900 Third Avenue, 16th Floor
New York, New York 10022
Telephone: (212) 909-0600
Facsimile: (212) 909-0666
Karen Ostad (KO-5596)
Dina Gielchinsky (DG-6054)


UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X

| | | |
|---|---|---|
| In re: | | In a Proceeding Under |
| | : | Section 304 of the |
| Petition of Catherine Geraldine Regan, as Foreign Representative of **RIVERSTONE INSURANCE (UK)** | : | Bankruptcy Code |
| **LIMITED**, | | |
| | : | Case No. 05-      (   ) |
| Subject of a Foreign Proceeding. | | |

---------------------------------------------------------------- X

| | | |
|---|---|---|
| In re: | | |
| | : | In a Proceeding Under |
| Petition of Catherine Geraldine Regan, as Foreign | | Section 304 of the |
| Representative of **SPHERE DRAKE INSURANCE** | : | Bankruptcy Code |
| **LIMITED**, formerly Odyssey Re (London) Limited, | | |
| | : | |
| Subject of a Foreign Proceeding. | | Case No. 05-      (   ) |
| | : | |

---------------------------------------------------------------- X


## MEMORANDUM OF LAW IN SUPPORT OF (i) PETITIONS FOR THE COMMENCEMENT OF CASES ANCILLARY TO FOREIGN PROCEEDING UNDER SECTION 304 OF THE BANKRUPTCY CODE AND (ii) VERIFIED PETITION FOR AN ORDER GIVING FULL FORCE AND EFFECT TO U.K. SCHEME UNDER SECTION 304(b) OF THE BANKRUPTCY CODE

# Table of Contents

**Page(s)**

INTRODUCTION ........................................................................................................... 1

PRELIMINARY STATEMENT ..................................................................................... 1

FACTS .......................................................................................................................... 2

I.     THE PETITIONER SATISFIES ALL OF THE REQUIREMENTS FOR
     COMMENCING AN ANCILLARY PROCEEDING UNDER SECTION 304
     OF THE BANKRUPTCY CODE ................................................................... 2

     A.     An Ancillary Proceeding is Required to Ensure that the U.K. Scheme
     Companies' Assets Will be Properly Distributed Within the Uniform
     Framework of the U.K. Scheme ..................................................................... 2

     B.     The Petitioner Satisfies the Commencement Criteria of Section 304(a) ........ 3

         (i)     Foreign Proceeding ............................................................................ 3

              (a)     A Solvent Foreign Action May Constitute A "Foreign
              Proceeding" ............................................................................ 3

                    1.     The Transfer Satisfies One Or More Of The
                    Purposes Enumerated In 11 U.S.C. § 101(23) ............. 5

                    2.     The U.K. Scheme Complied With The FSMA's
                    Procedures Requiring Adequate Judicial
                    Involvement And Supervision, As Well As
                    Accessibility To The English Court For Creditors
                    To Voice Any Objections ............................................. 8

              (b)     The Express Language Of 11 U.S.C. § 101(23) Allows A
               Foreign Action To Qualify As A "Foreign Proceeding"
               Whether Or Not It Arises Under Bankruptcy Law .................. 9

              (c)     The Legislative History of 11 U.S.C. § 304 Demonstrates
               Congress' Desire For A Broad Application
               Of Section 304 .................................................................... 11

         (ii)     Foreign Representative ..................................................................... 12

     C.     The Petitions Satisfy or are Not Subject to the Requirements
     of Section 109(a) .......................................................................................... 13

     D.     The Petitioner Satisfies the Venue Requirements of 28
     U.S.C. § 1410 .............................................................................................. 14

     E.     The Petitioner's Request for Relief Complies with the Factors
     Enumerated in Section 304(c) ...................................................................... 15

         (i)     Relief under Section 304 Will Ensure Just Treatment of All
            of the U.K. Scheme Companies' Creditors and Policyholders .......... 15

         (ii)     The Relief Requested Will Neither Prejudice Nor Inconvenience
            U.S. Claim Holders .......................................................................... 16

         (iii)     The Relief Requested Will Prevent Preferential or Fraudulent
            Disposition of Assets ....................................................................... 16

(iv)     Proceeds of U.K. Scheme Companies' Estates Are Distributed in a Manner Substantially Similar to That Prescribed by the Bankruptcy code ............................................................................... 16

(v)     The Foreign Proceeding Is Entitled to Comity ................................. 17

II.     THE PETITIONER'S REQUEST FOR RELIEF IS FIRMLY WITHIN THE SCOPE OF AVAILABLE RELIEF UNDER SECTION 304 AND SHOULD BE GRANTED BY THE COURT ........................................................................... 19

A.     Available Relief in An Ancillary Proceeding Commenced Under Section 304(b) ............................................................................................................ 19

B.     Giving Full Force and Effect to the U.K. Scheme is Appropriate In the Circumstances Presented ............................................................................. 20

CONCLUSION .................................................................................................................... 21

# Table of Authorities

**Page(s)**

## Cases

*Ahles Realty Corp. v. Comm'r of Internal Revenue*, 71 F.2d 150 (2d Cir. 1934) .............................................. 6

*AP Esteve Sales, Inc. v. Manning (In re Manning)*, 236 B.R. 14 (9th Cir. B.A.P. 1999) ............................... 14

*Arig Insurance Company, Limited (In re Schwarzmann)*,
 Case No. 03-17057(SMB) (Bankr. S.D.N.Y. 2003) ............................................................. 3, 11

*Armco Fin. Servs. Corp. v. North Atl. Ins. Co. (In re Bird)*, 229 B.R. 90
 (Bankr S.D.N.Y. 1999) ............................................................................................................ 21

*Assurantiemaatschappij "De Zeven Provincien" NV (In re Schwarzmann)*,
 Case No. 02-16430(RDD) (Bankr. S.D.N.Y. 2002) ............................................................ 4, 11

*Bank of N.Y. v. Treco (In re Treco)*, 240 F.3d 148 (2d Cir. 2001) ............................................... 17, 18

*Bowers v. Andrew Weir Shipping, Ltd.*, 810 F. Supp. 522 (S.D.N.Y. 1992) ..................................... 6

*Cornfeld v. Investors Overseas Servs.*, Ltd., 471 F. Supp. 1255 (S.D.N.Y. 1979) ................... 17, 18

*Craddock-Terry Co. v. Powell*, 25 S.E.2d 363 (Va. 1943) ............................................................. 8

*Cunard Steamship Co. v. Salen Reefer Servs. A.B.*, 773 F.2d 452 (2d Cir. 1985) ................. 15, 19

*Garcia v. United States*, 469 U.S. 70 (1984) ............................................................................... 10

*Goerg v. Parungao (In re Goerg)*, 844 F.2d 1562 (11th Cir. 1988) ............................... 12, 14, 20

*Haarhuis v. Kunnan Enterprises, Ltd.*, 177 F.3d 1007 (D.C. Cir. 1999) ...................................... 14

*Hilton v. Guyot*, 159 U.S. 113 (1895) ..................................................................................... 17, 18

*Holdman v. Barclays Bank plc (In re Maxwell Communication Corp.)*,
 170 B.R. 800 (Bankr. S.D.N.Y. 1994) ...................................................................................... 12

*Hong Kong & Shanghai Banking Corp. v. Simon (In re Simon)*, 153 F.3d 991
 (9th Cir. 1998), cert. denied, 525 U.S. 1141 (1999) ................................................................ 21

*In re Bd. of Dir. of Hopewell International Insurance Ltd.*, 238 B.R. 25 (Bankr. S.D.N.Y. 1999) ........ 4, 5, 11

*In re Bd. of Dirs. of Compania Gen. de Combustibles S.A.*, 269 B.R. 104 (Bankr. S.D.N.Y. 2001) ........ 17, 18

*In re Bird*, 222 B.R. 229 (Bankr. S.D.N.Y. 1998) ....................................................................... 19

*In re Brierley*, 145 B.R. 151 (Bankr. S.D.N.Y. 1992) ................................................................. 13

*In re Culmer*, 25 B.R. 621 (Bankr. S.D.N.Y. 1982) .............................................. 12, 15, 17, 18

*In re Davis*, 191 B.R. 577 (Bankr. S.D.N.Y. 1996) .................................................................... 18

*In re Fracmaster*, 237 B.R. 627 (Bankr. E.D. Tex. 1999) ............................................. 5, 10, 11

*In re Ionica PLC*, 241 B.R. 829 (Bankr. S.D.N.Y. 1999) ........................................................... 17

*In re Kingscroft Ins. Co.*, 138 B.R. 121 (Bankr. S.D. Fla. 1992) ............................................... 13

*In re Koreag*, 130 B.R. 705 (Bankr. S.D.N.Y. 1991) ................................................................. 17

*In re Laitasalo*, 193 B.R. 187 (Bankr. S.D.N.Y. 1996) ...................................................................18

*In re Lineas Areas de Nicaragua, S.A.* 13 B.R. 779 (Bankr. S.D. Fla. 1981) ..........................12, 20

*In re Rose ex rel. London & Scottish Assur. Corp.*, Case No. 04-11829
2004 Bankr. LEXIS 2093 (Bankr. S.D.N.Y. Dec. 29, 2004) ............................................4, 5, 11

*In re Rubin*, 160 B.R. 269 (Bankr. S.D.N.Y. 1993)......................................................................18

*In re Taylor*, 176 B.R. 903 (Bankr. C.D. Cal. 1995) ...........................................................5, 10, 11

*Intercontinental Hotels Corp. v. Golden*, 15 N.Y.2d 9 (1964) .....................................................17

*JCPL Leasing Corp. v. Treco (In re Treco)*, 227 B.R. 343
(Bankr. S.D.N.Y. 1998)...........................................................................................................20

*Lohnes v. Level 3 Communications, Inc.*, 272 F.3d 49 (1st Cir. 2001)...........................................6

*Marlon Insurance Company Limited (In re Hall)*, Case No. 03-42343(CB)
(Bankr. S.D.N.Y. 2003) .......................................................................................................4, 11

*Osiris Insurance Limited (In re McMahon)*, Case No. 98-45518(SMB)
(Bankr. S.D.N.Y. 1998) .......................................................................................................4, 11

*People ex rel. Barrett v. Halsted Street State Bank*, 14 N.E.2d 872
(Ill. App. Ct. 1938) ...................................................................................................................7

*Ramus Insurance Ltd. (In re Mitchell)*, Case No. 01-12160(SMB)
(Bankr. S.D.N.Y. 2001) .......................................................................................................4, 11

*Spirt v. Teachers Ins. and Annuity Ass'n*, 691 F.2d 1054 (2d Cir. 1982).....................................18

*Stephens v. Nat'l Distillers & Chem. Corp.*, 69 F.3d 1226 (2d Cir. 1995) ...................................18

*The Prudential Assurance Company Limited (In re Omni Whittington Insurance Services Limited)*,
Case No. 04-14884 (ALG) (Bankr. S.D.N.Y. 2004)...............................................................3, 11

*Universal Cas. & Surety Co. v. Gee (In re Gee)* 53 B.R. 891 (Bankr. S.D.N.Y. 1985).....................3, 16, 17

*Vesta Fire Ins. Corp. v. New Cap Reinsurance Corp.*, 244 B.R. 209 (Bankr. S.D.N.Y. 2000) ....................21

*Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709 (2d Cir. 1987)..........................15, 20

## Statutes

11 U.S.C. § 101(24) ..............................................................................................................12, 13

11 U.S.C. § 109(a) .....................................................................................................................13

11 U.S.C. § 304(b) .....................................................................................................................19

11 U.S.C. § 304(b)(1) ..................................................................................................................3

11 U.S.C. §§ 304(b)(2) .................................................................................................................3

11 U.S.C. § 304(b)(3) ..................................................................................................................3

11 U.S.C. § 304(c) ..................................................................................................................2, 15

11 U.S. C. § 304(c)(4)) ...............................................................................................................17

11 U.S.C. §101(23) .................................................................................................................4, 10

26 U.S.C. § 368(E - F) ........................................................................................................... 5

28 U.S.C. § 1410 ................................................................................................................... 14

# INTRODUCTION

Catherine Geraldine Regan (the "Petitioner"), as Foreign Representative of RiverStone Insurance (UK) Limited ("RiverStone") and Sphere Drake Insurance Limited ("SDI," and together with RiverStone, the "U.K. Scheme Companies," and each a "U.K. Scheme Company"), by her U.S. attorneys, Lovells, respectfully submits this Memorandum of Law pursuant to Rule 9013-1(b) of the Local Bankruptcy Rules for the Southern District of New York in support of the Petitions for the commencement of a case ancillary to a foreign proceeding pursuant to Section 304 of title 11 of the United States Code (the "Bankruptcy Code") (each the "304 Petition" and collectively, the "304 Petitions") and Verified Petition for an Order Giving Full Force and Effect to U.K. Scheme under Section 304(b) of the Bankruptcy Code (the "Verified Petition"), dated April 19, 2005, pursuant to Section 304 of the Bankruptcy Code and Rule 65 of the Federal Rules of Civil Procedure (the "Federal Rules"), made applicable hereto pursuant to Rule 7065 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

# PRELIMINARY STATEMENT

On October 8, 2004, a petition was made to the High Court of England and Wales in London, England (the "English Court") seeking the sanction of a U.K. Scheme (the "U.K. Scheme") for the transfer of the policies, reinsurance, assets and liabilities of thirteen solvent companies, including SDI, engaged in carrying out contracts of insurance in the U.K. (each a "Transferor Company," collectively, the "Transferring Companies") to RiverStone pursuant to Part VII of the Financial Services and Markets Act 2000 ("FSMA"). On December 15, 2004, the English Court entered an order sanctioning the U.K. Scheme (the "U.K. Final Order"). The transfer took place on December 31, 2004, apart from SDI's business which comprises policies, reinsurance, liabilities and assets that consist of, or are supported by, U.S. trusts and contracts of reinsurance, and which are governed by U.S. law or were written in the U.S. (the "U.S. Requirements Business"). The Petitioner only makes this Section 304 application in respect of this U.S. Requirements Business. The Petitioner seeks an order giving full force and effect to the U.K. Scheme's provisions for the transfer of SDI's U.S. Requirements Business to RiverStone. The relief sought in the 304

Petitions and the Verified Petition would contribute to an "economical and expeditious" administration of the foreign estates consistent with the factors set forth in 11 U.S.C § 304(c).

## FACTS

The pertinent facts are set forth in the 304 Petitions and the Verified Petition filed contemporaneously herewith, and incorporated fully herein.

## I.
## THE PETITIONER SATISFIES ALL OF THE REQUIREMENTS FOR COMMENCING AN ANCILLARY PROCEEDING UNDER SECTION 304 OF THE BANKRUPTCY CODE

**A.      An Ancillary Proceeding is Required to Ensure that the U.K. Scheme Companies' Assets Will be Properly Distributed Within the Uniform Framework of the U.K. Scheme**

It is both the intention and obligation of the Petitioner to ensure that (a) the U.K. Scheme is implemented in a manner that reorganizes and rationalizes the businesses of the U.K. Scheme Companies through a consolidation of SDI's U.S. Requirements Business to RiverStone, and (b) this occurs with no material adverse impact upon the rights of creditors and policyholders of the U.K. Scheme Companies.

The authority of the English Court, FSMA and the Financial Services Authority (the "FSA"), which is the U.K. regulator authority which monitors the U.K. financial services market, does not automatically extend under the federal laws of the U.S. or the laws of the various states to those assets and affairs arising out of the U.S. Requirements Business that are located in the U.S.  Absent an order giving full force and effect to the U.K. Scheme, debtors, creditors and/or insureds of SDI in respect of the U.S. Requirements Business may seek to attach SDI's assets or commence proceedings in respect of the U.S. Requirements Business, which would result in the piecemeal and inconsistent enforcement in the U.S. of the U.K. Final Order.  This was the very concern that Section 304 of the Bankruptcy Code was designed to address.

Section 304 provides that the Court may enjoin the commencement or continuation of any action against a debtor in a foreign proceeding or any property involved in that proceeding, order the turnover of the foreign debtor's property located in the U.S., or the proceeds of such property, to the foreign

representative and order whatever additional relief it deems "appropriate." 11 U.S.C. §§ 304(b)(1), (b)(2) and (b)(3). As the court stated in *Universal Cas. & Surety Co. v. Gee (In re Gee)*, "Congress has recognized the bankruptcy courts' need for considerable flexibility in confronting the multitude of complex and unforeseen problems that are associated with international bankruptcy cases." 53 B.R. 891, 896 (Bankr. S.D.N.Y. 1985). Granting the relief sought in the 304 Petitions will enable SDI and RiverStone to effect the transfer of the U.S. Requirements Business in a manner that will not adversely impact creditors, policyholders and other constituent parties.

**B.      The Petitioner Satisfies the
            Commencement Criteria of Section 304(a)**

Section 304(a) provides that "[a] case ancillary to a foreign proceeding is commenced by the filing with the bankruptcy court of a petition under this section by a foreign representative." 11 U.S.C. § 304.

**(i)      Foreign Proceeding**

Section 101(23) of the Bankruptcy Code defines a foreign proceeding as a "proceeding, whether judicial or administrative and whether or not under bankruptcy law, in a foreign country in which the debtor's domicile, residence, principal place of business, or principal assets were located at the commencement of such proceedings, for the purpose of liquidating an estate, adjusting debts by composition, extension, or discharge, or effecting a reorganization." 11 U.S.C. § 101(23). The definition of a foreign proceeding is very broad and is specifically not limited to proceedings under a bankruptcy or insolvency statute. *Id*.

(a)      A Solvent Foreign Action May Constitute A "Foreign Proceeding"

U.S. bankruptcy courts have consistently granted Section 304 relief ancillary to solvent foreign actions. For example, the Bankruptcy Court for the Southern District of New York, in (1) *The Prudential Assurance Company Limited (In re Omni Whittington Insurance Services Limited)*, Case No. 04-14884 (ALG) (Bankr. S.D.N.Y. 2004) (permanent injunction granted Sept. 9, 2004); (2) *Arig Insurance Company, Limited (In re Schwarzmann)*, Case No. 03-17057(SMB) (Bankr. S.D.N.Y. 2003) (permanent injunction

granted Dec. 9, 2003); (3) *Marlon Insurance Company Limited (In re Hall)*, Case No. 03-42343(CB) (Bankr. S.D.N.Y. 2003) (permanent injunction granted Nov. 5, 2003); (4) *Assurantiemaatschappij "De Zeven Provincien" NV (In re Schwarzmann)*, Case No. 02-16430(RDD) (Bankr. S.D.N.Y. 2002) (permanent injunction granted March 25, 2003); (5) *Ramus Insurance Ltd. (In re Mitchell)*, Case No. 01-12160(SMB) (Bankr. S.D.N.Y. 2001) (permanent injunction granted June 6, 2001); (6) *In re Bd. of Dir. of Hopewell International Insurance Ltd.*, 238 B.R. 25 (Bankr. S.D.N.Y. 1999); and (7) *Osiris Insurance Limited (In re McMahon)*, Case No. 98-45518(SMB) (Bankr. S.D.N.Y. 1998) (permanent injunction granted Nov. 16, 1998), granted permanent Section 304 relief ancillary to solvent foreign actions, finding the existence of a "foreign proceeding" under 11 U.S.C. § 101(23) *See* decisions and orders attached hereto as <u>Exhibits A - G</u>, respectively.

In the *Hopewell* decision granting Section 304 relief, former Chief Judge Brozman held that the factors to consider in determining what constitutes a foreign proceeding are (1) whether the purpose of the foreign action satisfies one of the purposes enumerated in Section 101(23) ("liquidating an estate, adjusting debts by composition, extension, or discharge, or effecting a reorganization"), *see Hopewell*, 238 B.R. at 49, and (2) the "amount of judicial involvement and supervision or, conversely, the degree of access to the court available at various stages to creditors so that they may voice any objections they may have." *Hopewell*, 238 B.R. at 50. After detailed analysis of the foreign action at issue and its approval process, Judge Brozman concluded that the foreign action qualified as a "foreign proceeding" under 11 U.S.C. §101(23). *See id*. at 49, 50-52.[1]

As demonstrated below, the U.K. Scheme satisfies one ore more of the purposes enumerated in Section 101(23). The U.K. Scheme also complied with the FSMA's procedures requiring adequate judicial involvement and supervision, as well as accessibility to the English Court for creditors to voice any objections.

---

[1]    In her order denying Section 304 relief ancillary to a Part VII transfer in *In re Rose ex rel. London & Scottish Assur. Corp.*, Case No. 04-11829, 2004 Bankr. LEXIS 2093 (Bankr. S.D.N.Y. Dec. 29, 2004), for which an appeal has been voluntarily withdrawn, Judge Prudence Carter Beatty agreed that "solvent debtors may file bankruptcy cases and voluntarily surrender their assets." *See id*, at *10.

1.    <u>The Transfer Satisfies One Or More Of The Purposes Enumerated In 11 U.S.C. § 101(23)</u>

According to the plain language of 11 U.S.C. § 101(23), as well as caselaw construing such language, so long as the foreign action was initiated for the purpose of "liquidating an estate, adjusting debts by composition, extension, or discharge, or effecting a reorganization," it constitutes a "foreign proceeding." *See In re Taylor*, 176 B.R. 903, 907 n. 10 (Bankr. C.D. Cal. 1995); *Hopewell*, 238 B.R. at 49; *In re Fracmaster*, 237 B.R. 627, 633-34 (Bankr. E.D. Tex. 1999).  This list is read as a disjunctive list, "so a foreign action qualifies as a 'foreign proceeding' so long as it seeks one of the purposes enumerated in 11 U.S.C. § 101(23): (1) liquidating an estate; (2) adjusting debts by composition, extension, or discharge, or (3) effecting a reorganization." *In re Fracmaster*, 237 B.R. at  633.[2]

The purpose of the U.K. Scheme is that of "effecting a reorganization" of the U.K. Scheme Companies.  While the Bankruptcy Code does not define the term "reorganization," the Internal Revenue Code enumerates several definitions of "reorganization," including:

> (E) a recapitalization;
>
> (F) a mere change in identity, form, or place of organization of one corporation, however effected; or
>
> (G) a transfer by a corporation of all or part of its assets to another corporation in a title 11 or similar case…

26 U.S.C. § 368(E - F) (2004).

Each of these definitions describes the purpose of the U.K. Scheme, which is illustrated as follows:

---

[2]    Judge Beatty found that each item in this list was to be construed by reference to the other two items; that is, a foreign action seeking to effect a reorganization would not qualify as a "foreign proceeding" if it did not "have characteristics of proceedings of the type that the adjectives immediately preceding that word have, as well as have characteristics of proceedings of the type described elsewhere in the Code, such as a Chapter 11 reorganization." *In re Rose*  2004 Bankr. LEXIS at *8.  Judge Beatty's finding that the foreign action in that case, which was initiated for the purpose of "effecting a reorganization," did not constitute a "foreign proceeding" on this basis is confusing, as the order itself recognizes that the ultimate goal of the foreign action was for the companies transferring their assets and liabilities to be liquidated.  *See id.* at *5.  "[L]iquidating an estate" is clearly one of the other items in the list enumerated in 11 U.S.C. § 101(23), and by Judge Beatty's own reasoning, should have qualified the action as a "foreign proceeding."  Notwithstanding this, the Petitioner respectfully requests that this Court consider the plain language of the statute, as well as caselaw instructing that a foreign action need not arise under an insolvency statute, discussed below, in construing the items listed in Section 101(23) separately.

> The purpose of the Scheme is to transfer to RiverStone the participation of each of the Transferors in the business underwritten through the agency of the Predecessor Companies together with all of SDI's other general insurance business (subject to certain exceptions). …The Scheme will also transfer the benefit of the various reinsurance policies covering the transferred business together with certain other assets.

(Affidavit of Catherine Geraldine Regan in support of application for the U.K. Scheme to the English Court, dated October 1, 2004, ¶ 11, attached hereto as <u>Exhibit H</u>.)

Likewise, the following characteristics of reorganizations have been espoused by federal and state courts, corroborating the reorganization purpose contemplated by the U.K. Scheme:

- "'The old corporation will transfer to the new corporation *** all of the assets of the old corporation including name and good will as a going concern.' … There was a continuity of interest in the transaction, a continuance of the business conducted by the old corporation under the modified corporate form." *Ahles Realty Corp. v. Comm'r of Internal Revenue*, 71 F.2d 150, 151 (2d Cir. 1934), cert. denied, 293 U.S. 611 (1934).

- "The preeminent legal lexicon defines 'reorganization,' in pertinent part, as a 'general term describing corporate amalgamations or readjustments occurring, for example, when one corporation acquires another in a merger or acquisition, a single corporation divides into two or more entities, or a corporation makes a substantial change in its capital structure.'" *Lohnes v. Level 3 Communications, Inc.*, 272 F.3d 49, 56 (1st Cir. 2001) (citing BLACK'S LAW DICT. 1298 (6th ed. 1990)).

- "One change exempted from [an employer's ERISA liability upon withdrawing from a pension plan] is a 'reorganization which involves a mere change in identity, form, or place of organization, however effected.' The Court has determined that the joint venture is not encompassed within this provision. As the arbitrator observed, the formation of Safbank and the transfer of operations to it 'involved the creation of an entirely new and separate corporate entity, without any of the original corporate entities changing its identity or form in any respect." *Bowers v. Andrew Weir Shipping, Ltd.*, 810 F. Supp. 522, 527-28 (S.D.N.Y. 1992) (internal citations omitted).

- "The word 'reorganization,' as applied to corporations, is defined in 8 Thompson on Corporations (3rd Ed.), p. 4, as follows: 'Reorganization simply means the act or process of organizing again or anew. In the law of corporations, it means only what the term itself indicates, that a corporation has by some process organized anew; and yet it implies that some of the features of the old corporation are retained…. A reorganization is usually effected by the dissolution of one and the organization of a new corporation to take the property and franchise of the first and to continue its business.' Under the plan for which petitioners rendered legal services the reorganization of the State bank was to be effected by the creation of a new bank to continue the business of the old one by taking over the bank building and part of its assets in exchange for an assumption of part of its liabilities." *People ex rel. Barrett v. Halsted Street State Bank*, 14 N.E.2d 872, 877 (Ill. App. Ct. 1938).

- "The plan submitted by the board of directors, measured by the above definitions, dissipates the notion of the presence of liquidation. …In our opinion it involved an entirely different and exceedingly important doctrine associated and connected with corporations, which is that of Reorganization. In Corpus Juris Secundum, vol. 19, Corporations, p. 1318, Section 1578, an entire section … is devoted to the subject 'Reorganization'. This is said:

  > … 'Reorganization of a corporation is the reconstruction or rehabilitation of an existing corporation. It is frequently regulated by statute, the right to reorganize being derived from the laws of the state of the corporation's origin. Reorganization, in the law of corporations, has been defined to mean that by some process a corporation has organized anew, usually effected by the dissolution of one and the organization of a new corporation to take the property and franchise of the first and to continue its business. * * * It has been held that where a new corporation is formed by stockholders and directors of an existing corporation, and its directors and practically all its stockholders, franchises, and property are identical with those of the old corporation, the transaction both in fact and in law amounts to a reorganization of the old corporation.'

By the plan which was adopted the new corporation, i.e. the Craddock-Terry Shoe Corporation, was formed by stockholders and directors of the old corporation, i.e. Craddock-Terry Company. The

stockholders and directors of the new corporation and its property (except its franchise) are identical with those of the old corporation, with the exception of the dissident stockholders of the old company. Their objects, purposes and business were identical with the exception of the fact that the new corporation entered the business world with a capital structure unimpaired and in inviting form for credit and confidence."

*Craddock-Terry Co. v. Powell*, 25 S.E.2d 363, 383-84 (Va. 1943).

The U.K. Scheme's purpose thus meets the criteria for a "foreign proceeding" under Section 101(23).

2.    The U.K. Scheme Complied With The FSMA's Procedures Requiring
      Adequate Judicial Involvement And Supervision, As Well As
      <u>Accessibility To The English Court For Creditors To Voice Any Objections</u>

By applying to the English Court for the sanctioning of the U.K. Scheme, the U.K. Scheme Companies have commenced a judicial proceeding under the supervision of the FSA and the English Court for the purpose of reorganizing the estates and assets of the U.K. Scheme Companies in accordance with the FSMA. Known parties-in-interest, including U.S. parties-in-interest, have been notified of the U.K. Scheme and the English Court proceeding by mail, and parties that remain unidentified despite the U.K. Scheme Companies' extensive efforts to locate them have been notified by publication, as approved by the English Court. These parties-in-interest, including U.S. parties-in-interest, were entitled to raise objections and have them considered by the English Court in accordance with U.K. law.

Besides allowing parties-in-interest the opportunity to object to the U.K. Scheme, the U.K. Scheme also complied with FSMA requirements directed at ensuring that parties-in-interest are not adversely impacted. Specifically, before a Part VII transfer is sanctioned by the English Court, an independent expert must report on the transfer and its effects on policyholders and creditors. The English Court will take the interests of the parties into account when it considers the transfer. A transfer that is considered by the independent expert to have a material adverse effect on policyholders and creditors will not be approved by the English Court.

The independent expert must be a person appearing to the FSA to have the skills necessary to enable him to make a proper report and either nominated or approved for the purpose by the FSA. The report on the transfer must also be made in a form approved by the FSA.

In compliance with this requirement, these reports on the U.K. Scheme (the "U.K. Scheme Expert Reports") have been prepared by Dewi James, a Fellow of the Institute of Actuaries and a partner at James, Brennan & Associates. The FSA approved Mr. James's appointment as the expert for the purposes of the application to the English Court on July 7, 2004. The FSA approved the form of the U.K. Scheme Expert Reports on October 1, 2004. In each of his U.K. Scheme Expert Reports, Mr. James concludes that the U.K. Scheme will not adversely affect the policyholders of RiverStone or any of the Transferring Companies.

In addition, in order to reorganize the U.K. Scheme Companies' assets and liabilities, and accordingly to modify their balance sheets, Part VII requires judicial procedure, in which the consent of the creditors whose contracts are transferred is not sought individually, but is instead deemed given through their lack of meritorious objection, as their interests are held to be sufficiently protected. Thus, the determination made by the English Court on December 15, 2004, that the U.K. Scheme protects the rights of all parties, including those objecting, is a prerequisite to judicial sanction of a Part VII transfer, just as the findings required under Section 1129(b) of the Bankruptcy Code are required for confirmation of a Chapter 11 plan.

(b)     The Express Language Of 11 U.S.C. § 101(23) Allows A Foreign Action
To Qualify As A "Foreign Proceeding" Whether Or Not It Arises Under Bankruptcy Law

Not only may a solvent foreign action constitute a "foreign proceedings," the express definition of "foreign proceedings" includes proceedings under foreign non-bankruptcy law as well.

As noted above, 11 U.S.C. § 101(23) defines a "foreign proceeding" as follows:

> [A] proceeding, whether judicial or administrative and whether
> or not under bankruptcy law, in a foreign country in which the
> debtor's domicile, residence, principal place of business, or

> principal assets were located at the commencement of such
> proceeding, for the purpose of liquidating an estate, adjusting
> debts by composition, extension, or discharge, or effecting a
> reorganization.

11 U.S.C. § 101(23) (emphasis added).

This definition has been adhered to by bankruptcy courts when confronted with a request for Section 304 relief ancillary to a foreign action arising under non-bankruptcy law. For example, the court in *In re Taylor*, found that an Australian company was engaged in a "foreign proceeding" over an objector's argument that the foreign action, a court-ordered receivership, was not an insolvency proceeding. 176 B.R. at 907 ("Clarke contests whether the Receivership Action constitutes a 'foreign proceeding,' arguing essentially that only an 'insolvency proceeding' qualifies as such a foreign proceeding for purposes of the Bankruptcy Code."). Citing Section 101(23), the court determined that the objector's "premise is wrong," finding that the receivership order gave the receiver authority to perform a broad variety of duties which fell into the categories enumerated in Section 101(23), thus fulfilling the definition of a "foreign proceeding." *See id.* at 907 n.10.

Similarly, the court in *In re Fracmaster*, found the existence of a "foreign proceeding" despite arguments by the respondents in the case that the foreign action, also a receivership, was not a foreign bankruptcy proceeding. 237 B.R. at 633. The respondents highlighted a portion of legislative history to Section 304 to bolster their position: "That is, where a *foreign bankruptcy case* is pending concerning a certain debtor and that debtor has assets in this country, the foreign representative may file a petition under this section…." *Id.* (citing S.Rep. 95-989, 95th Cong., 2d Sess. 35 (1978)), reprinted in 1978 U.S.C.C.A.N. 5787, 5821 (emphasis in case). The court, however, abided by the actual language of 11 U.S.C. §101(23) allowing a foreign action to qualify as a foreign proceeding regardless of "'…whether or not [it is brought] under bankruptcy law,'" reasoning that "[t]he statutory text actually adopted by Congress is a much more reliable barometer of its intent regarding the scope of a qualifying foreign proceeding and such text should not be overridden by some largely descriptive general statement contained in committee notes." *Id.* (citing *Garcia v. United States*, 469 U.S. 70 (1984) ("only the most extraordinary showing of contrary intentions

[from the legislative history] would justify a limitation of the 'plan [sic] meaning' of the statutory language.").[3]

In fact, all of the foreign proceedings in the cases cited in subsections (a) and (b) above were conducted under foreign non-bankruptcy law.  *See In re Fracmaster*, (court-ordered receivership under Companies' Creditors Arrangement Act of Canada); *In re Taylor,* (court-ordered receivership under Australian Corporations Law Section 420); *The Prudential Assurance Company Limited (In re Omni Whittington Insurance Services Limited)*, Case No. 04-14884 (Section 425 of the U.K. Companies Act 1985); *Arig Insurance Company, Limited (In re Schwarzmann)*, Case No. 03-17057 (Section 425 of the U.K. Companies Act 1985);  *Marlon Insurance Company Limited (In re Hall)*, Case No. 03-42343 (Section 425 of the U.K. Companies Act 1985); *Assurantiemaatschappij "De Zeven Provincien" NV (In re Schwarzmann)*, Case No. 02-16430 (Section 425 of the U.K. Companies Act 1985 and Corporations Act 2010 of Australia);  *Ramus Insurance Ltd. (In re Mitchell)*, Case No. 01-12160 (Section 425 of the U.K. Companies Act 1985);  *In re Hopewell,* 238 B.R. 25 (Section 99 of the Bermuda Companies Act 1981); and *Osiris Insurance Limited (In re McMahon)*, Case No. 98-45518 (Section 425 of the U.K. Companies Act 1985).

(c)     The Legislative History of 11 U.S.C. § 304 Demonstrates
Congress' Desire For A Broad Application Of Section 304

The legislative history of Section 304 actually evidences Congress' intent for bankruptcy courts to consider the factors enumerated in Section 304(c) in the context of a universalistic approach, whereby comity is generously afforded to foreign actions in foreign countries:

> These guidelines are designed to give the court the maximum flexibility in handling ancillary cases.  Principles of international comity and respect for the judgments and laws of

---

[3]     Judge Beatty pointed to the same legislative history in her order denying Section 304 relief in *In re Rose*, 2004 Bankr. LEXIS 2093, finding that no "foreign proceeding" existed because the proceeding in that case, also a Part VII transfer, was not an insolvency proceeding.  *See id*. at *8.  In light of the caselaw explicitly directing that the express language of the statute trump the legislative history, as well as the myriad cases discussed in the next paragraph of the text that have granted Section 304 relief ancillary to a proceeding which was not an insolvency proceeding, the Petitioner respectfully submits that the order in *In re Rose*, which in any event is not binding up this Court, should not be followed.

> other nations suggest that the court be permitted to make the
> appropriate orders under all of the circumstances of each case,
> rather than being provided with inflexible rules.

S.Rep. 95-989, 95th Cong., 2d Sess. 35 (1978)), reprinted in 1978 U.S.C.C.A.N. 5787, 5821. *Colliers on Bankruptcy*, (15th Ed. Revised), 304.01[2][4]  The court in *In re Lineas Areas de Nicaragua, S.A.*, observed that "the legislative history is clear that this court has been given the maximum flexibility in handling ancillary cases in order that it may fashion appropriate relief tailored to each case, balancing the sometimes divergent interests of comity and protection of claim holders in the United States." 13 B.R. 779, 780 (Bankr. S.D. Fla. 1981).  Out of this promoted deference to comity, courts are granted the ability to "broadly mold appropriate relief in near blank check fashion." *In re Culmer*, 25 B.R. 621, 624 (Bankr. S.D.N.Y. 1982) (citing legislative history).  The court in *Goerg v. Parungao* (*In re Goerg*), 844 F.2d 1562, 1568 (11th Cir. 1988), cert. denied, 488 U.S. 1034 (1989) similarly summarized the legislative history as an instruction that "[i]t is this clear that Congress enacted section 304 to help further the efficiency of foreign insolvency proceedings involving worldwide assets."

Thus, both Congressional intent and caselaw instruct that in construing Section 304's requirements, bankruptcy courts must consider principles of comity.  In this vein, and as set forth in this memorandum, the transfer in respect of the U.S. Requirements Business at issue that has been sanctioned by the English Court should be held to comprise a "foreign proceeding."

### (ii)    Foreign Representative

Section 101(24) of the Bankruptcy Code defines a foreign representative as a "duly selected trustee, administrator, or other representative of an estate in a foreign proceeding."  11 U.S.C. § 101(24).

---

[4]    While a bankruptcy court must first find the existence of a "foreign representative" and "foreign proceeding" under Section 304(a) before considering the factors enumerated in Section 304(c), the same universalistic approach is encouraged in the bankruptcy court's general approach to requests for relief under Section 304. *See Holdman v. Barclays Bank plc (In re Maxwell Communication Corp.)*, 170 B.R. 800, 816 (Bankr. S.D.N.Y. 1994), aff'd, 93 F.3d 1036 (2d Cir. 1996)) ("As the enactment of section 304 of the Bankruptcy Code demonstrates, the United States in ancillary bankruptcy cases has embraced an approach to international insolvency which is a modified form of universalism accepting the central premise of universalism, that is, that assets should be collected and distributed on a worldwide basis, but reserving to local courts discretion to evaluate the fairness of home country procedures and to protect the interests of local creditors.").

The Petitioner was duly appointed by each of the U.K. Scheme Companies' board of directors to apply to the English Court for sanctioning of the U.K. Scheme and to make the Section 304 Petitions. Copies of the board resolutions are annexed to the Verified Petition as Exhibit A. Courts have held that a board of directors could act as a foreign representative for purposes of a Section 304 proceeding. *See Hopewell*, 238 B.R. at 52-53; *In re Kingscroft Ins. Co.*, 138 B.R. 121, 124 (Bankr. S.D. Fla. 1992). Accordingly, the Petitioner, being duly selected by the boards of directors to act for each of the U.K. Scheme Companies in regards to the Section 304 Petitions, properly qualifies as a foreign representative within the meaning of 11 U.S.C. § 101(24) and is entitled to commence this ancillary proceeding pursuant to Section 304.

In sum, each of the U.K. Scheme Companies is the subject of a "foreign proceeding" as defined in Section §101(23) of the Bankruptcy Code, and the Petitioner is a "foreign representative" as defined in Section §101(24) of the Bankruptcy Code. Because these threshold requirements are met, the Petitioner is entitled to proceed under Section 304 of the Bankruptcy Code.

**C.      The Petitions Satisfy or are Not Subject
          to the Requirements of Section 109(a)**

Section 109(a) provides that "[n]otwithstanding any other provision of this section, only a person that resides or has a domicile, a place of business, or property in the United States, or a municipality, may be a debtor under this title." 11 U.S.C. § 109(a).

In numerous cases commenced in this district, this Court has held that it is not necessary for a Section 304 petitioner to meet the standard outlined in Section 109(a). See, e.g., *In re Brierley*, 145 B.R. 151, 159 (Bankr. S.D.N.Y. 1992) ("Having reflected on whether the debtor eligibility requirements have been engrafted onto section 304, I hold squarely that they have not."). As the United States Court of Appeals for the Eleventh Circuit has noted, "the debtor in a section 304 proceeding need not qualify as a 'debtor' under the Code's definition of that term. Rather, the debtor need only be properly subject, under applicable foreign law, to a proceeding commenced 'for the purpose of liquidating an estate, adjusting debts

by composition, extension, or discharge, or effecting a reorganization.'" *In re Goerg*, 844 F.2d at 1568. *See also AP Esteve Sales, Inc. v. Manning (In re Manning)*, 236 B.R. 14 (9th Cir. B.A.P. 1999); *Haarhuis v. Kunnan Enterprises, Ltd.*, 177 F.3d 1007 (D.C. Cir. 1999). Even notwithstanding these decisions, however, the U.K. Scheme Companies in these cases satisfy the test under Section 109(a). As described in the Verified Petition, SDI owns property located within the U.S. (See Verified Petition at ¶¶ 23-27.)

**D.      The Petitioner Satisfies the Venue Requirements of 28 U.S.C. § 1410**

28 U.S.C. § 1410 provides:

> (a)      A case under section 304 of title 11 to enjoin the commencement or continuation of an action or proceeding in a State or Federal court, or the enforcement of a judgment, may be commenced only in the district court for the district where the State or Federal court sits in which is pending the action or proceeding against which the injunction is sought.

> (b)      A case under section 304 of title 11 to enjoin the enforcement of a lien against a property, or to require the turnover of property of an estate, may be commenced only in the district court for the district in which such property is found.

> (c)      A case under section 304 of title 11, other than a case specified in subsection (a) or (b) of this section, may be commenced only in the district court for the district in which is located the principal place of business in the United States, or the principal assets in the United States, of the estate that is the subject of such case.

A significant amount of SDI's U.S. interests, comprising trust funds maintained in respect of SDI's U.S. Requirements Business, are located in the Southern District of New York. Additionally, the U.K. Scheme Companies' U.S. attorneys are located in the Southern District of New York. As such, and absent any other venue that would serve as a more appropriate forum, the administration of these ancillary proceedings in the Southern District of New York provides an economical and efficient benefit to the estates of the U.K. Scheme Companies. Accordingly, the Bankruptcy Court for the Southern District of New York is the appropriate forum for the institution of these Section 304 proceedings, in accordance with Section §1410.[5]

---

[5]      Under the Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (Ward, Acting C.J., dated July 10, 1984), for purposes of 28 U.S.C. § 1410, the Bankruptcy Court is vested with the authority otherwise conferred upon the District Court.

## E.     The Petitioner's Request for Relief Complies with the Factors Enumerated in Section 304(c)

Section 304(c) of the Bankruptcy Code provides that, in determining whether to grant relief, "the court shall be guided by what will best assure an economical and expeditious administration of [the foreign] estate." 11 U.S.C. § 304(c).  *See also Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B,* 825 F.2d 709, 713-14 (2d Cir. 1987); *Cunard Steamship Co. v. Salen Reefer Servs. A.B.*, 773 F.2d 452, 459 (2d Cir. 1985).  The court's decision must be consistent with six factors, five of which are relevant here:

> In determining whether to grant relief under subsection (b) of this section, the court shall be guided by what will best assure an economical and expeditious administration of such estate, consistent with--
>
> (1)     just treatment of all holders of claims against or interests in such estate;
>
> (2)     protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding;
>
> (3)     prevention of preferential or fraudulent dispositions of property of such estate;
>
> (4)     distribution of proceeds of such estate substantially in accordance with the order prescribed by this title; and
>
> (5)     comity.[6]

11 U.S.C. § 304(c).

### (i)     Relief under Section 304 Will Ensure Just Treatment of All of the U.K. Scheme Companies' Creditors and Policyholders

By granting the requested relief, the Court will ensure that judicial approval of the U.K. Scheme occurs in an orderly fashion in a single forum, pursuant to the terms of Part VII of FSMA. The relief sought furthers the well-established policy of favoring a uniform administration in a foreign court. *See, e.g., Culmer*, 25 B.R. at 629.

The application to the English Court for sanctioning of the U.K. Scheme and the requirements of the FSMA include detailed provisions ensuring notice to and the fair treatment of creditors and policyholders,

---

[6]     The sixth factor, the provision for a fresh start, is not applicable in this case.

and provided for a full and fair opportunity to objectors to be heard by the English Court. In addition, the FSA has provided regulatory oversight and approval of the U.K. Scheme, and has considered the Independent Expert's Report, which concludes that the risks to the policyholders are sufficiently remote for it to be appropriate to proceed with the U.K. Scheme.

### (ii) The Relief Requested Will Neither Prejudice Nor Inconvenience U.S. Claim Holders

Under the U.K. Scheme, all creditors and policyholders will receive exactly the same treatment as prior to the U.K. Scheme. The only difference will be that their claims will be against RiverStone, rather than SDI. Because RiverStone will be vested with all of SDI's assets matching its liabilities, there will be no adverse impact.

### (iii) The Relief Requested Will Prevent Preferential or Fraudulent Disposition of Assets

The U.K. Scheme Companies are not insolvent, and therefore, the possibility of preferential and/or fraudulent transfers is remote, if not non-existent.

### (iv) Proceeds of U.K. Scheme Companies' Estates Are Distributed in a Manner Substantially Similar to That Prescribed by the Bankruptcy Code

As stated, under the U.K. Scheme, all creditors and policyholders will receive exactly the same treatment as prior to the U.K. Scheme. The only difference will be that their claims will be against RiverStone, rather than SDI. Because RiverStone will be vested with all of SDI's assets matching its liabilities, there will be no adverse impact.

Notably, in considering whether relief under Section 304(b) is appropriate, a court need not determine that the foreign law is identical in all respects to the Bankruptcy Code. As this Court reasoned in *In re Gee*, "[i]t is not necessary that the law] be a carbon copy of the Bankruptcy Code; rather, it must be of a nature that is not repugnant to the American laws and policies." 53 B.R. at 904; *see also Culmer*, 25 B.R. at 631 ("whether or not Bahamian law is identical in application to American law, there is nothing inherently vicious, wicked, immoral or shocking to the prevailing American moral sense"); *In re Bd. of Dirs. of*

*Compania Gen. de Combustibles S.A.*, 269 B.R. 104, 111 (Bankr. S.D.N.Y. 2001)*, (interpreting *Bank of N.Y. v. Treco (In re Treco)*, 240 F.3d 148 (2d Cir. 2001) to require a showing of "maladministration of corruption" in order to defeat request for relief under Section 304(c)(4)).

**(v)        The Foreign Proceeding Is Entitled to Comity**

Comity has been cited by many courts, and particularly this Court, as the most important of the Section 304(c) factors. *See, e.g., In re Treco*, 240 F.3d at 156 ("a court's function under § 304 is to determine whether comity should be extended to the foreign proceeding in light of the other factors"); *In re Gee*, 53 B.R. at 901 ("[a]lthough comity is only one of six factors to be considered in determining whether to grant relief, it often will be the most significant…"); *In re Koreag*, 130 B.R. 705, 712 (Bankr. S.D.N.Y. 1991), vacated on other grounds, 961 F.2d 341 (2d Cir.), cert. denied, 506 U.S. 865 (1992). In *In re Ionica PLC*, 241 B.R. 829, 836 (Bankr. S.D.N.Y. 1999), this Court sanctioned this approach by observing that "[o]nce a court concludes that the foreign proceeding meets the requisite standard for comity, it must decide how much weight to give to the other factors in section 304(c)."

The decision of the Supreme Court in *Hilton v. Guyot*, 159 U.S. 113 (1895), provides "[t]he starting point for any discussion of the doctrine of international comity." *Cornfeld v. Investors Overseas Servs., Ltd.*, 471 F. Supp. 1255, 1258 (S.D.N.Y. 1979). In that case, the Supreme Court defined comity as:

> the recognition which one nation allows within its territory to
> the legislative, executive, or judicial acts of another nation,
> having due regard both to international duty and convenience,
> and to the rights of its own citizens, or of other persons who are
> under the protection of its laws.

*Hilton*, 159 U.S. at 164. It is well-settled that comity should be accorded to foreign law "as long as the laws and public policy of the forum state are not violated." *In re Culmer*, 25 B.R. at 629.

The New York State Court of Appeals has adopted an even more liberal view, stating that "[f]oreign-based rights should be enforced unless the judicial enforcement of such a [right] would be the approval of a transaction which is inherently vicious, wicked or immoral, and shocking to the prevailing moral sense." *Intercontinental Hotels Corp. v. Golden*, 15 N.Y.2d 9, 13 (1964); *Cornfeld*, 471 F. Supp. at 1259 (citing

same). Subsequent decisions of this Court have expressly extended this proposition to the Section 304 context. The foreign provisions need only be not "repugnant" to our notions of fairness and to the Bankruptcy Code's distributional scheme. *See Treco*, 240 F.3d at 157 ("a court's function under § 304 is to determine whether comity should be extended to the foreign proceeding in light of the other factors"); *In re Bd. of Dirs. of Compania Gen. De Combustibles S.A.*, 269 B.R. at 112 (citing *In re Davis*, 191 B.R. 577, 587 (Bankr. S.D.N.Y. 1996)) (this Court required U.S. swap creditors to participate in Argentine insolvency proceeding of swap counterparty, even though Argentine law did not provide swap participants with Bankruptcy Code's protections); *In re Culmer*, 25 B.R. at 624. Recognizing the U.K. Scheme and granting the relief requested herein will not violate the laws or public policy of the U.S. On the contrary, U.S. courts regard "the passage of Section 304 as an expression of the importance of principles of international comity." *See In re Culmer*, 25 B.R. at 631 (citing *Cornfeld*, 471 F. Supp. at 1260, 1262).[7]

---

[7] Although the transfer under the Scheme may impact the regulation of the "business of insurance" by those states with laws prohibiting novation absent policyholder consent, and thus may implicate the *McCarran-Ferguson Act*, 15 U.S.C. § 1012, which leaves regulation of the insurance industry primarily to the states, this act does not preempt Section 304. "The McCarran-Ferguson Act, by its plain terms, provides that 'no act of Congress shall be construed to invalidate, impair, or supercede any law enacted by any State for the purpose of regulating the business of insurance … unless such Act specifically relates to the business of insurance.'" *Stephens v. Nat'l Distillers & Chem. Corp.*, 69 F.3d 1226, 1234 (2d Cir. 1995) (citing 15 U.S.C. § 1012(b)). "But since neither the language nor the history of the McCarran-Ferguson Act suggest[sic] it, we should not read the McCarran-Ferguson Act to require a clear congressional statement of intent to preempt, when the preemption had already occurred through operation of pre-existing, non-statutory law. In such situations, it is not the codifying 'act of Congress' that preempts state law; it is rather the underlying common law -- which the McCarran-Ferguson Act does not purport to deal with -- that accomplishes the preemption." *Id.* (holding that the McCarran-Ferguson Act does not preclude application of the Foreign Sovereign Immunities Act, which codified pre-existing principles of international law). "Similarly, [as in *Nat'l Distillers*], section 304 of the Bankruptcy Code has international-law origins which are also different from the kind of congressional statutory action that the McCarran-Ferguson Act was enacted to address. … In both *National Distillers* and [*Spirt v. Teachers Ins. and Annuity Ass'n*, 691 F.2d 1054 (2d Cir. 1982) (holding that the McCarran-Ferguson Act does not preclude application of Title VII), cert. granted and judgment vacated, remand on other grounds, 463 U.S. 1223 (1983), reinstated on other grounds as modified, 735 F.2d 23 (2d Cir. 1984), cert. denied, 469 U.S. 881 (1984)] the Court of Appeals held that the McCarran-Ferguson Act was consistent with Federal laws enacted to protect national interests concerning civil rights and foreign policy. Section 304 recognizes and embraces important national concerns -- the treatment of foreign debtors, U.S. and foreign creditors and international commerce. The Second Circuit Court of Appeals has held, where appropriate, that the international law principle of comity applies to international bankruptcy proceedings. Under New York law, the principle of comity in international bankruptcy proceedings predates the effective date of Section 304." *In re Laitasalo*, 193 B.R. 187, 192 (Bankr. S.D.N.Y. 1996) (internal citations omitted); *see also Hilton* 159 U.S. at 163-64; *Treco*, 240 F.3d at 158 ("In this case, of course, § 304(c) supplants the federal common law comity analysis conducted by courts pursuant to *Hilton*."). *See also In re Rubin*, 160 B.R. 269, 278, 280 (Bankr. S.D.N.Y. 1993) ("In the face of valid federal interests, the McCarran Ferguson Act should be construed narrowly. … There is strong evidence that granting ancillary relief under section 304 does not run afoul of the McCarran-Ferguson Act by abridging New York's regulation of the business of insurance."). Thus, McCarran-Ferguson does not preempt this Court's ability to give full force and effect to the Scheme.

It is particularly significant that the U.S. bankruptcy courts, including this Court, have consistently recognized a policy favoring the interests of a foreign country in reorganizing the affairs of its own business entities.  As stated by this Court in *In re Bird*, 222 B.R. 229, 233 (Bankr. S.D.N.Y. 1998), a case ancillary to a foreign proceeding in the U.K., it is the foreign tribunal that is "in the best position to assess where and when claims should be liquidated so as to conserve estate resources and maximize the assets available for distribution."  *See also Cunard*, 773 F.2d at 458; *Rubin*, 160 B.R. at 283 ("there is a distinct judicial preference for deferring to the foreign tribunal litigation respecting the validity or the amount of the claims against the Foreign Debtor").

As set forth above, all relevant factors in Section 304(c) indicate that the Court should grant the relief requested in order to effect an economical and expeditious reorganization of the U.K. Scheme Companies' estates.

## II.
## THE PETITIONER'S REQUEST FOR RELIEF IS FIRMLY WITHIN THE SCOPE OF AVAILABLE RELIEF UNDER SECTION 304 AND SHOULD BE GRANTED BY THE COURT

**A.     Available Relief in An Ancillary Proceeding Commenced Under Section 304(b)**

Section 304(b), in relevant part, provides that the court may (1) enjoin the commencement or continuation of any action against a debtor with respect to property involved in the foreign proceeding or any action against such property, or the enforcement of any judgment against the debtor with respect to such property, or any act or the commencement or continuation of any judicial proceeding to create or enforce a lien against the property of such estate; (2) order turnover of the property of such estate, or the proceeds of such property, to such foreign representative; or (3) order other appropriate relief. 11 U.S.C. § 304(b).

The legislative history of the Bankruptcy Code states that the factors that are to be considered under Section 304(c) in determining whether to grant relief under Subsection 304(b) are "guidelines . . . designed to give the court the maximum flexibility in handling ancillary cases.  Principles of international comity and

respect for the judgments and laws of other nations suggest that the court be permitted to make the appropriate orders under all of the circumstances of each case, rather than being provided with inflexible rules." H.R. Rep. No. 95-595, 95th Cong. 1st Sess. 324-325 (1977); S.Rep. No. 95-989, 95th Cong., 2nd Sess. (1978) 35. Similarly, courts have held that "it is within the discretion of the bankruptcy court guided by the factors enumerated in Section 304(c) to determine what relief, if any, is appropriate." *JCPL Leasing Corp. v. Treco (In re Treco)*, 227 B.R. 343, 349 (Bankr. S.D.N.Y. 1998) (citing *In re Goerg*, 844 F.2d at 1568). The court in *In re Lineas Areas de Nicaragua, S.A.*, observed that "the legislative history is clear that this court has been given the maximum flexibility in handling ancillary cases in order that it may fashion appropriate relief tailored to each case, balancing the sometimes divergent interests of comity and protection of claim holders in the United States." 13 B.R. at 780. Notably, in *Culmer*, this Court concluded that Section 304(b) provided it with the broad flexibility to "mold relief in near blank check fashion." 25 B.R. at 624.

**B.      Giving Full Force and Effect to the U.K. Scheme
is Appropriate In the Circumstances Presented**

The Petitioner seeks permanent relief to protect the U.K. Scheme Companies in the U.S. and, in so doing, protect the integrity of the U.K. Scheme and the jurisdiction of the English Court. *See, Victrix,* 825 F.2d at 713-14 ("The equitable and orderly distribution of a debtor's property requires . . . a single proceeding . . .").

As explained in the Verified Petition, the Petitioner seeks Section 304 relief to effect the transfer of SDI's current and future liabilities in respect of the U.S. Requirements Business, which are primarily related to insurance and reinsurance policies written by SDI to U.S. policyholders. Though the last known open claim arising out of the U.S. Requirements Business is in relation to underwriting year 2000, there may be other outstanding claims and/or litigation which will require the U.K. Scheme Companies to expend funds individually substituting RiverStone for SDI. In addition, these policies may be subject to restrictions on transfer and novation imposed by the laws of the state(s) in which such policyholders are located. The terms

of the U.K. Scheme will effect the novation of SDI's current and future obligations with respect to these policies arising out of the U.S. Requirements Business.

The relief sought by the Petitioner is an order of this Court that will implement in the U.S. the terms of the U.K. Final Order.  It is a basic tenet of the Bankruptcy Code that all reorganization proceedings should be adjudicated in a central forum so as to ensure fair and systematic treatment of parties in interest. In fact, the policy underlying Section 304 is the recognition that, absent extraordinary circumstances, only one court should make critical decisions about the future of the "estate."  *See, e.g., Vesta Fire Ins. Corp. v. New Cap Reinsurance Corp.*, 244 B.R. 209, 213 (Bankr. S.D.N.Y. 2000) (granting relief under Section 304, thus compelling submission of claims to Australian court system notwithstanding contract provision requiring arbitration in Alabama), aff'd, 238 F.3d 186 (2d Cir. 2001) (*citing Armco Fin. Servs. Corp. v. North Atl. Ins. Co. (In re Bird)*, 229 B.R. 90, 94 (Bankr. S.D.N.Y. 1999)). "If any philosophy can be attributed to the structure of the Code it is that of deference to the country where the primary insolvency proceeding is located . . . and flexible cooperation in administration of assets." *Hopewell*, 238 B.R. at 54 (*quoting Hong Kong & Shanghai Banking Corp. v. Simon (In re Simon)*, 153 F.3d 991, 998 (9th Cir. 1998), cert. denied, 525 U.S. 1141 (1999)).

## CONCLUSION

For all of the foregoing reasons, Petitioner respectfully requests that the Court grant the relief requested in the 304 Petitions and Verified Petition.

Dated: New York, New York
          April 19, 2005

        LOVELLS
        Attorneys for Petitioner

        By: /s/ Karen Ostad
           Karen Ostad (KO-5596)
           Dina Gielchinsky (DG-6054)
           900 Third Avenue, 16th Floor
           New York, NY 10022
           (212) 909-0600